cterny Territory. I'm here representing the petitioner on this matter, Herbert Campbell. I'd like to reserve a few minutes of time for the public. The journey here to this court, Your Honor, has been a long, arduous, and painful one. Mr. Boyle, please pick that microphone up so that your voice is carrying up. Is that better, Your Honor? Better. The journey to this courtroom today, Your Honor, has been a long, arduous, and painful one. I'm not just talking about my flight from Pittsburgh to Newark. Let's just talk about what you are seeking in the way of correction. What Mr. Campbell is seeking, Your Honor, is the expungement of the entire proceedings below. The order to show cause was issued inappropriately. It should never have been issued because the INS did not follow its internal operating procedures. It would require you to receive prior approval before even issuing the order to show cause. So in this instance, Mr. Campbell is seeking to have the entire administrative action annulled and is requesting that the INS reinstitute those proceedings in accordance with the internal operating instructions. Well, they're no longer in effect. They've been repealed. They have been repealed, Your Honor, but at the time, these proceedings that make this matter to this court today, at the time it was placed in deportation proceedings, those internal operating proceedings were in effect. And as courts have considered the effect of operating instructions and other policies of the INS later down the road, which have been later repealed, they have always looked back to the operations instructions or other policies that were in effect at the time the deportation proceedings were in effect. Doesn't the amended order to show cause cure the deficiency of the initial one? No, it does not. The INS believes that its amendment could ratify its prior act. How could it ratify something of which it was unaware until our court wrote a letter to the government a short time ago? I think that's a very good point, Your Honor. In addition to that, you cannot ratify that which they were not able to do in the first instance. They could not ratify an invalid act. So some post-act could not be ratified. Well, let's start from the beginning. Seventeen years ago, this order to show cause issued, as I understand it. And your claim today... Actually, that was ten years ago. Ten years ago? In January of 1997. March. No, in January of 1997, the issue... It was in 1997. Yes, sir. And your claim today is that that order to show cause is void because it did not have the authority of the Board of Commissioners, which was supposed to issue that authority, where there was a deportation order for a veteran. And this was a Vietnam veteran. That's right. And what do you suggest we do at this point? Because you've gone through a lot of proceedings before the immigration authorities and before the courts. And we're here today for the first time learning that there was never an order issued by the Board of Commissioners. And so you would say that there was no authority for them to issue the order to show cause. Am I right? That's correct. That being so, what do you suggest that we do? Well, Your Honor, this is a problem the INS is making. The INS put on notice as early as January of 1998 when Mr. Campbell first made his appeal to the Board of Immigration Appeals and cited the specific operations instruction that the INS violated. And the Board of Immigration Appeals and the INS's counsel failed to address that issue.  Well, maybe they didn't. But we now know, Mr. Boyle, that there was no authority for them to have issued the order to show cause. And what I want to know is if you were writing the opinion in this case, what would you do? How would you frame the opinion to remedy what you consider to be a void exercise by the immigration authorities? I would do what this Court and the Supreme Court have done in other cases, and that is to recognize that the agency action should therefore be invalidated. All right. Because they failed to follow the procedure. And then what do we do? Then it's up to the INS. We start all over. Yes, Your Honor. We start off by – the INS, the former INS, starts off by sending it for approval to a commissioner, correct? Because I suppose it would have to be – we would have to apply the procedures, in effect, at the time when the defective ordered to show cause issued, correct? That's correct. That would be a party court that did, and that's what other courts that have pursued. Well, if we look at when this case should have gone for approval in the first instance, we had a man who I think, by his own admission, had 16 drug offenses convictions and not a terribly wonderful record. So you're not suggesting, are you, that the INS or its successor would come to any different conclusions than came to initially, albeit after seeking approval? Your Honor, I don't know what the INS would ultimately conclude. However, I do know that the regulations and statutes, when a veteran is applying for either naturalization or challenging the deportation, that the INS will grant the waiver based on the individual's conduct. And what they do is they look back from five years from when the application was pending so that if this deportation proceeding is annulled in the first instance and invalidated, the INS would have to pursue Mr. Campbell based on his last five years of conduct. And that last five years of conduct has been exemplary. Mr. Campbell, although he could not be here today because he's receiving treatment at a VA hospital, has exhibited, I think over the years, and I think we've attached letters and records to that fact, that over the past few years, he has been a model citizen. He's kept himself out of trouble. He has hopefully witnessed drug problems. We're not an immigration board, and that's a good argument that you may be making, but not before us. Before us, you've got to tell us why the operation instructions, the operating instructions, are to be treated as a matter of law since the Fifth Circuit, the Eighth Circuit, and the Eleventh Circuit all say that operating instructions in different contexts, to be true, that operating instructions are not the same as substantive law. Why should we treat it as anything other than something less than being the dignity, having the dignity of a statute or a regulation? Because the Supreme Court requires this court to, with all due respect, and in addition to that, this court... What did the Supreme Court say about operating instructions? The Supreme Court has never addressed the issue, the specific issue about operating instructions, but it has addressed the issue about agency policies that are instituted, that circumscribe the discretion of the agency, which is what we have here. In the case of INS versus Yang, for example, the court cautioned... Which case is that? INS versus Yang, Your Honor. Yes, yes, I have it. 1996 Supreme Court case. Yeah. The court cautioned the INS that if it adopted a general policy by which it would circumscribe its discretion, and they deviated from that policy without reason, irrationally, then that action would be overturned as an abuse of discretion. So that you would have us hold, as I understand it, that the operating instructions in this case should be given the same effect as a statute or a regulation. Yes, I would, Your Honor, and this is why. While Petitioner does concede that as a general matter, operations instructions may not be enforceable, that is a general matter, where they are for the benefit of the INS and its own internal procedures. I thought you would say that the internal operating instruction confers a very specific right. Well, that's where I was getting to, Your Honor. While it's a general matter, if they are for the benefit of the INS and its internal procedures, then it may not be enforceable. But in this case, this was an operating instruction that conferred the benefit, and was for the sole benefit of veterans, former members of the military, who were about to enter a deportation procedure. And the benefit, I guess, would be the hope or expectation that someone, some commissioner would say you can't proceed with the order to show cause, I'm not approving it, correct? Precisely. In a case like Herbert Campbell, who was receiving and is in dire need of and is still receiving today, veterans administration benefits, that would be a very important right, a very important prior approval to have to receive. He would be deported to Jamaica. As far as I understand, Your Honor, there are no veterans hospitals in Jamaica. Any thought why it was done by way of an internal operating procedure versus a regulation? I couldn't tell you that, Your Honor. Because you wouldn't have this problem if there was a regulation. Well, I don't know that there would be a problem here if they adopted it by regulation, but I don't think that that matters because courts have looked at INS policies, memorandums published in newsletters that they've enforced as law. It's a narrow window you seek to sneak in. I don't mean sneak in. You've been trying for, what, how many years? The operating instruction. Yeah, no, no, no. It was only in effect for six months. Why was it repealed, do you know? Not a matter of record. Your Honor, we looked for legislative agency history on the matter, could not find it, and the INS does not cite anything that shows that this was not intended to aid, defer, benefit, or be deported. You know what I don't follow? The remedy that you seek is that we simply annul the proceeding and your client simply gets residency or an opportunity to apply for naturalization. That's correct. Why can't we say that there was a proceeding that was defective and we can tell the INS to go back and fix it, do it right this time? Isn't that normally what we do? Right, and that's, in essence, what we're asking. All right. I think that's a distinction. But that means that you would take your case back and the regional commissioner would have to make a decision as to whether your client should be given a dispensation from you. Well, the regional commissioner should have to decide whether or not All right, so you agree with that. the award of Shokash should have been issued in the first place. And you would hope that he would say it should not be reissued now for whatever reason. That is correct. He'll take any reason at all. The problem with that, again, as Judge Barker noted, was that the statute or the operating instruction has since been repealed. So I'm not sure who would have the authority at this point within the INS to do that. If nobody has the authority to do that, then the only other remedy is to invalidate the agency action. Are there still commissioners or border patrols or whatever the statute did require or the operating instruction required? I'm sure that there are that level of assistant commissioners. You know what I was wondering, given that this operating procedure has been repealed and considering that your client applied for naturalization and was rejected because of his awful record, do you think really he has a chance to get me? Absolutely, Your Honor. There's nothing in the Immigration and Naturalization Act that forbids Mr. Campbell from reapplying for naturalization. And if he did so, it would be based on the five years prior to the application for naturalization. On that record, I think he would have a very good chance. He's not in very good physical condition now, as I understand. He isn't very bad at all. He has children here in the U.S.? I believe he has five children. I have one further question I want to ask. Mr. Campbell filed a pro se brief, as you know. He raises a number of issues in that pro se brief, including exhaustion, his naturalization application, monetary damages, et cetera, et cetera. If we were to be persuaded, and I'm not suggesting we are, but if we were to be persuaded by your argument that the order to show cause was of no effect, do we have to deal with any of the issues that are raised in his pro se brief or any of the other issues that are raised in your brief? I believe that you would, Your Honor. We would? We would. To the extent that Mr. Campbell is seeking damages for the improper procedures that took place. I think you meant to say we wouldn't have to consider any other issues, didn't you? Other than that, Your Honor. Do we still have to consider a damage issue? I think that you meant it. Well, perhaps you're going to speak to us on rebuttal. You want to give that a little thought? I will. Why don't you do that and then come back and tell us? The baseball season is over. If there ever was one across the plate, that was it. Good morning. I do support Peter O'Malley, Assistant U.S. Attorney for the Department. Addressing Judge Garth's last question first, certainly there's no place for a damage claim here in the first instance for the court of appeals where nothing is ever perceived below and just before. I think your friend is going to tell us that when he comes back. How about exhaustion? Do we have to address exhaustion? Isn't that jurisdiction? Exhaustion is one of those primarily jurisdictional questions that a court should address first. And I would submit, as we point out in the brief, that one sentence casual throwaway line for the BIA on an issue that has required a 48-page brief. Well, now, let's see. First, let me ask you a question, Mr. O'Malley. Do you know what the phrase mea culpa means? Yes, I grew up. Because this all started because the INS messed up 11 years ago. And when it was raised, the issue was raised before the BIA in the first appeal, government never responded. Indeed, on three separate instances before us on this appeal, it was raised by Mr. Campbell, and the government never responded.  And the attorney that was appointed and you were directed by us to answer this question about the approval. Did the 48-page brief come in? I think you'd be in a better posture if you were to say, we messed up. Now what do we do about it? It's not clear from the record that the then INS messed up. Well, there is no approval. You have just written that. Wait a minute. The internal, the operating instruction required that approval be sought. You told us in your letter there is no record of any approval having been sought, and you described the government's conduct as negligent. Are you telling us now? I said even if it were negligent, it does not give rise to an estoppel. In January of 1997, Mr. Campbell was incarcerated. The initial order to show cause was issued by the operating officer for the institution. It's not clear that his veteran status was even of record until his DD-214 was filed as an exhibit in September of 1997, after the amended order to show cause and after— Mr. O'Malley, did or did not the INS seek approval from the commissioner? Yes or no? It does not appear that it did. That's a no. There's nothing in the operating instruction. Well, if you don't know, why— How is it to be done? If you don't know, who's going to know? And meanwhile, again, no mea culpa, you accuse Mr. Campbell of not meeting his burden of showing that the approval was not issued. Fine. I'll start with the premise that it wasn't issued. That does not forgive him anything. This is not a regulation. It doesn't say what factors the commissioner should consider, what the commissioner should do with the fact that the alien is a veteran. It says, should not issue it without review. What's the point of an operating instruction that gives somebody a specific right if you cannot pursue your rights under that? An operating instruction cannot give a specific right. But it does. The cases that Judge Garth mentioned earlier have all, and the other circuits that have addressed it, have all held that these are not sources of substantive rights. But what does it say? Not in this circuit, Mr. O'Malley. We haven't addressed that issue. But you have. And the moment we address the issue, and if we determine that indeed it should have been given effect, then what happens to your argument? You have addressed it in other contexts. Specifically in the Social Security context as to some of the programs, operations, manuals that are in the palms of the Social Security Administration, which is an internally operating system, which does not give, this Court itself does not give substantive rights. Mr. O'Malley, he can't be deported unless you have an order to show cause. You cannot get an order to show cause unless you get permission from the regional commissioner. Why does that not give him a specific right? He had an amended order to show cause.  By your own admission, you say in your brief at page 26 that it didn't add new charges, just added a few factual allegations. It was not an amended order to show cause. That's what they characterized it as. Who characterized it? Who characterized it? They did, INS did. They did. You know, I'm a little bit ashamed of the government's position in this. The operating instruction says an order to show cause shall not be issued in the case of a member or former member of the armed forces of the United States unless prior approval for such action has been received from the assistant commissioner, border patrol, or investigation. Now that's what it says. And that was not apparently effective. And it surprises me that our government, which only seeks justice and doesn't seek victories, should take the position that without authority, it nevertheless can deport this individual no matter what his character is, without starting all over again. I would expect more from the United States government, Mr. O'Malley, and I must say that I think this is the first time I've ever said this from the bench. It's the operating instruction to the extent it seeks to give veterans who are deportable aliens rights that are not the product of a statute or a regulation. Perhaps it was withdrawn because that invalidity was seen by somebody in the army. We're not talking about why it was withdrawn. We're talking about what was in existence at the time these proceedings started. And at the time these proceedings started, he was entitled to have the government's application approved before he could issue it. Correct? Correct. But the OI, the operating instruction, could not give him more than he is entitled to by statute and regulation, which means at best his veteran status should be considered as a discretionary factor. And maybe the commissioner would have said, look, this is a Vietnam veteran. We're not going to proceed on this. Because these drug offenses were so de minimis, leading Judge Linares to say, by the way, and I'll ask you that if we move on from this issue, that he was not convicted of an aggravated felony. This many years later, a district court judge of this district said he had not been convicted of an aggravated felony and stayed with the movement. So the commissioner could have decided the same thing and not permitted this application to proceed. That's a pretty important benefit that could have been, according to Mr. Campbell. Had the government followed the required procedure? Yes? Yes, it is, on the other hand, the original commissioner could have looked at 19 arrests. We'll never know. But we'll never know because there was no original commissioner who ever looked at it. Why shouldn't one look at it now? Because almost 11 years have elapsed. He's gone through two hearings. He's had his equitable considerations reviewed and balanced and found against him by the immigration judge. But this is a different issue. This is a different issue. Which is that he's not convicted of an aggravated felony. Perhaps they would not have given the approval in the first instance. For whatever reason. For whatever reason. Well, that's a speculative possibility. You can see that the regulation or operating instruction was not followed in this case. I can see that it appears not to have been followed. I cannot say more than that. I've tried to find something in that record which is impossible because the state of the administration is biased. Then let's take it as a hypothetical. The instruction was not followed. What would you suggest is the proper remedy when an operating instruction is not followed by the government? Then I would maintain that an operating instruction, as was found by every other court of appeals, because it is not drawn from the statute, it is not a source of substantive rights. It's a procedural directive for the agency. Well, wait a minute. Mr. Boyle says the Supreme Court has found that there is a substantive right when an operating instruction has not been followed. He said that they never addressed this particular issue. Schweiker v. Hansen, again, in a social security context, cited by this court in the Edelman case, says that the operating instructions of the Social Security Administration, the POMS, Program of Operational Manual Assistance, are not sources of individual rights to beneficiary employment. If we were to disagree with you, if we were to say that the operating instruction does confer a substantive right, then Mr. Campbell has a good case. Correct, if it could be a source of substantive rights. But it's not a feature, it's not a product of the statute. It doesn't give any standards that a statute would give to the agency for what to consider. It just has that blanket statement, no order to show cause shall be issued without review of the commission. It doesn't say why they should consider deferring it. The implication would be that the veteran status, that should be an equitable factor in the alien's favor. However, that was all considered by the immigration judge. And his veteran status was in 1973-74. Thereafter, he kind of led a very wavered life. His father and children met by various people. Oh, come on. That was all weighed by the immigration judge. May I call for ease up on this guy? Ease up on him a little bit. I mean, you to this day cannot tell us that there was an approval, and yet the ringing point in your brief is it is burdened to prove that there is. You know, over and over. That's what the law says. Well, the law says, or said at that time, that you must seek approval. Why does he have to follow the law but you don't? But that was not the law. That was an internal guideline. It's not a statute, it's not a regulation. Do you withdraw your argument that you made in your brief that when they filed the order to show cause, the amendment to the order to show cause, which added factual allegations, that that ratified the defective order to show cause? That was a reissue of the order to show cause. But you make a big point that they ratified the defective order to show cause. You call it the allegedly defective order to show cause. They didn't know that it was defective because you only found out a couple of months ago, correct? So you can't ratify something of which you did not have knowledge, right? Correct. But also there's no evidence that they knew he was a veteran until after that was issued. The DD-214 appears in the record at the state's non-union. And it's filed as an exhibit in September of 1997. The fact that he was brought to the attention of immigration by the jail that was housing him for his state court conviction, they're not going to necessarily have this whole file there to show that he was a veteran. That would even be relevant to his immigration status. He hadn't applied for citizenship yet, which perhaps if he had at an earlier time, and he was in a better position to get it, he might have been approved. What happens to Mr. Campbell if this case is returned, if the petition is granted? He's either deported or he gets some type of deferred leave. Well, wait, wait. Before he gets deported, he has leave not. Oh, if this is… If the petition is granted, if we find that there was a deficiency in the initial proceeding, if we find that he has a substantive right, what happens to Mr. Campbell? I assume he maintains his status quo. I mean, would the government issue an order to show cause? I have no idea what to do. I don't work for the DHS directly. I don't see their deportation. You're a designated hitter in this case? Correct. Aren't you glad? Had such a good time here, I know. Thank you, Mr. O'Malley. Thank you. Rebuttal. Mr. Boyle, have you thought about our last question to you? Yes, Your Honor. And what do you think? With introspection, I think that if this Court were to invalidate the agency action, that it would not have to consider the other arguments, and Mr. Campbell's petition. Thank you, Mr. O'Malley. Very enlightened position. I hope that the students from Seaton Hall have learned something from that. That's the only reason I did that. Your Honor, I really have to take exception with this issue about when the issue of military service was raised. At the very first hearing. Does it make any difference so far as the Section 18 of the operating instructions are concerned? No, I don't believe so. Well, then if it doesn't make any difference, aren't you a good way from third base almost home? Yes, Your Honor. Yeah. The other point of clarification that I want to make, Your Honor, is that Mr. O'Malley said that there's not one circuit that has found that operating instructions are enforceable. That is demonstrably false and is represented in our briefs. The Ninth Circuit, the Eighth Circuit, have both found that operating instructions can't be enforceable under military service. And finally, I want to make sure that the Court understands that the reason that the INS amended its complaint was at the behest of the immigration judge who told the INS that its sole allegation, based upon a March 1996 drug offense, would not support deportation. Because it was on appeal. Because it was on appeal. And if they wanted to proceed, they had better amend the complaint and put in additional violations. When you describe the amendment as an amended order to show cause, it just occurred to me that you were according too much dignity to the amendment. It's what they called it. Thank you, Your Honor. Thank you. We will take the case under advisement. And, Mr. Boyd, you were court appointed, are you not? Yes. You've done a superb job, and we thank you very much.  On behalf of Mr. Campbell, I have to thank the law firm. Will her argument in Zelenka v. NFI in Honeywell.